[No. 13359.    Department One. — June 2, 1890.]

JEROME CHURCHILL ET AL., APPELLANTS, *v.* E. LAUER ET AL., RESPONDENTS.

| 84 | 233 |
|---|---|
| 137 | 674 |

PLEADING — PARTIES — DIVERSION OF WATER — MISJOINDER. — Several persons, having separate tracts of land through which a stream of water flows, may join as plaintiffs to restrain the diversion of the stream at a point above their lands.

APPEAL from a judgment of the Superior Court of Modoc County.

The facts are stated in the opinion.

*Spencer & Raker*, and *C. A. Raker*, for Appellants.

The plaintiffs were properly joined. (*Hillman* v. *Newington*, 57 Cal. 56; *People* v. *G. R. D. & M. Co.*, 66 Cal. 149; 56 Am. Rep. 80; *Wilson* v. *Castro*, 31 Cal. 420; *Barham* v. *Hostetter*, 67 Cal. 272; *People* v. *Morrill*, 26 Cal. 336.)

*Ewing & Claflin*, and *Goodwin & Jenks*, for Respondents.

HAYNE, C. —This was a suit by ten plaintiffs against eighteen defendants to enjoin the latter from diverting the water of a stream called Pine Creek, in Modoc County. The complaint contains two counts. The first count alleges, in substance, that each plaintiff is the owner in severalty of a described lot of land, and that "all the said lots of land constitute one complete lot and body of land, and are all irrigated by the same stream of water, and from a common source, and cannot be irrigated by any other source." As we construe this count, it alleges that *all* of the plaintiffs are riparian proprietors. It first alleges that "the said stream has natural and well-defined beds and banks, and a natural and well-defined channel from its source to and upon *the lands of the plaintiffs, and across said lands respectively*, and that said creek, in

its own natural channel, when unobstructed, naturally flows to and upon *the said lands of plaintiffs.*" The respondents contend that this allegation is overcome by the following, viz.: "That said Pine Creek, in its own natural channel, flows upon and across the lands herein described as the lands owned by plaintiff Churchill, and Adin McDowell, and Stephen Burgoyne, and Ann R. Wood, and J. J. Rodkey, and Howard B. Porter, and John Wall, and across the said lands owned by each of said plaintiffs, and to some extent, by such natural flow, seepage, and percolation, irrigate and water portions of the said lands of plaintiffs Rachel C. Dorris, Carlos J. Dorris, and Ancil Morse," etc. It is true that the implication from this latter allegation is, that the stream flowed across the lands of the seven first-mentioned plaintiffs only, and consequently that they alone were riparian proprietors; but this implication is not enough to overcome the allegation first quoted. It is not the case of a general conclusion overcome by a specific fact, as supposed by counsel. And in addition to this the court afterward names the plaintiffs "Rachel C. Dorris, Carlos J Dorris, and Ancil Morse," and then proceeds as follows: "That each one of said plaintiffs last named is the owner of the whole of the beds and banks of said Pine Creek at that point where said creek flows upon and across his said lands; that each one of the plaintiffs last named is a riparian owner on the said creek, and, as such riparian owner, is entitled to the full flow, use, and benefit of all the waters of said creek upon and across his said lands," etc.

The most that can possibly be claimed for the respondents, therefore, is, that there is an inconsistency. But this can only be objected to by a special demurrer for ambiguity, uncertainty, etc. (*Blasingame* v. *Home Ins. Co.*, 75 Cal. 633; *Heeser* v. *Miller*, 77 Cal. 192.) Only one of the four demurrers specified this ground; and as it has not been argued, it must be held to be waived.

(*Whitby* v. *Rowell*, 82 Cal. 635.)  It must be held, there-
fore, that the first count shows that the plaintiffs were
riparian proprietors, and that portions of their lands
were irrigated by the direct flow of the stream, and por-
tions by the seepage and percolation.  (See, generally,
*Heilbron* v. *Canal Co.*, 75 Cal. 431.)  This count goes on
to allege facts which show that plaintiffs are using the
water, and will suffer irreparable injury from being
deprived of it; and that the defendants, for several
months before the commencement of the suit, have
unlawfully, and without right, diverted the water at a
point *above* the plaintiffs' lands, and have thereby pre-
vented it from reaching their lands; and that they
threaten to continue so to divert the water.

The second count repeats the allegations of the first, and
in addition alleges, in substance, that the plaintiffs have
constructed certain dams and ditches, whereby the waters
of said stream are used for the irrigation of such por-
tions of their said lands as are "not properly or sufficiently
irrigated by said natural flow, seepage, and percolation
of the waters of said creek," and have "appropriated"
large quantities of said waters for the purposes men-
tioned; and that " the plaintiffs, and each and every one
of them, have and hold and own a right to the unob-
structed flow of the waters of said Pine Creek, in the
natural channel thereof, to and upon said lands, and to
and through their said ditches, for the uses and purposes
hereinbefore stated."  These latter rights of the plaintiffs
are, perhaps, not very formally set forth, but the mode
of statement is not objected to, either in the record or
in the briefs; and under the circumstances must be held
to be sufficient.  Neither count alleges that the plaintiffs,
or any of them, have been damaged in any particular
sum; and no damages are prayed for, but only an in-
junction.

It therefore appears that the plaintiffs are the owners
in severalty of certain tracts along the banks of a

stream, and that they resort to a court of equity to prevent the wrongful diverson of the waters of such stream, not only because such diverson will irreparably injure their rights as riparian owners, but because it will irreparably injure their rights acquired by appropriation.

The defendants demurred to the complaint upon the grounds, among others, that there was a misjoinder of parties plaintiff, and a misjoinder of causes of action. The trial court sustained the demurrer, and rendered final judgment in favor of the defendants, and the plaintiffs appeal.

The respondents do not contend that the complaint does not state a cause of action against the defendants, and inasmuch as it is admitted, for the purposes of the demurrer, that the plaintiffs have some rights to the water, and that the defendants have no right thereto, as against the plaintiffs, but are mere trespassers, no such contention could be made. The positions taken in the argument are, that there was a misjoinder of parties, plaintiff, and a misjoinder of causes of action.

It is to be observed that the demurrer does not take the ground (and the respondents do not contend) that there was a misjoinder of parties *defendant.* And therefore, for the purposes of the appeal, the case is the same as if the diversion complained of was made and threatened by a single defendant.

We think that the plaintiffs had a right to join in the action. There is an exception, at least in equity cases, to the general rule as to joinder. This is stated by Story as follows: "Another exception to the general doctrine respecting multifariousness and misjoinder, which has already been alluded to, is where the parties (either plaintiffs or defendants) have one common interest touching the matter of the bill, *although they claim under distinct titles and have independent interests.* The cases respecting rights of common, where all the commoners may join, or one may sue or be sued for all; of parish-

ioners to establish a general *modus;* or of a parson to establish a general right to tithes against parishioners; and others of a like nature already stated under another head,—fully exemplify the doctrine; for in all of them there is a common interest centering in the point in issue in the cause." (Story's Eq. Pl., sec. 285.)

And this exception has been held to cover cases like the present. In *Ballou* v. *Inhabitants of Hopkinton,* 4 Gray, 328, it was held that the owners of different mills may join in a bill in equity to enjoin a stranger from letting off water from a reservoir which they had erected to collect the waters of a stream for the purpose of supplying their several mills; and Shaw, C. J., delivering the opinion, said: "Although the plaintiffs are several owners of separate and distinct mills, injured by the alleged stoppage, diversion, and waste of the water of Mill River, and to recover damage for which each owner must bring his several action at law to obtain a remedy for his particular injury, *yet they have a joint and common right in the natural flow of the stream,* and in the reservoir by which its power is increased, and a joint interest in the remedy which equity alone can afford, in maintaining a regular flow of the water of the reservoir at suitable and proper times, so as best to subserve the equal rights of them all. The remedy in equity, therefore, would by one decree in one suit prevent a multiplicity of actions."

In the foregoing case the plaintiffs had increased the flow of the stream by collecting its waters in a reservoir. The decision, however, did not proceed upon this circumstance, but was put upon the ground of the common right "in the natural flow of the stream."

The same principle was laid down in *Reed* v. *Gifford,* Hopk. Ch. *419. There several proprietors of separate and distinct lands and mills, supplied by a natural watercourse, were allowed to join in an application for an injunction to prevent the defendants from diverting

the water by means of a canal above the plaintiffs' property; and Chancellor Sandford said: "The rights of the general complainants in their respective lands are indeed distinct; but the grievance in question is a common injury to all the complainants. The water, in its natural descent from the lake, becomes the property of each of the complainants successively; all the complainants thus have right in the same subject; and the nature of the case forms a community of interests in the complainants."

Upon the authority of this case and others, two persons having separate and distinct tenements, which suffered a like injury from a nuisance, were allowed to join in a suit to enjoin the continuance of the nuisance, and Chancellor Walworth said of the preceding case that "as the relief sought was the same as to all the complainants there certainly was no good reason for compelling them to file several bills to protect their common right against acts of the defendant which were injurious to all of them." (*Murray* v. *Hay*, 1 Barb. Ch. 59.) And in Massachusetts the principle of the case first quoted has been held to sanction the joinder of several complainants in a suit to restrain a private nuisance, which was an injury to a passage-way, in which they had a right of way as appurtenant to their several estate; and the court, per Morton, J., said: "Undoubtedly, in a suit at law for the nuisance, they could not properly join. But the rule in equity as to the joinder of parties is more elastic. Generally, where several persons have a common interest in the subject-matter of the bill, and a right to ask for the same remedy against the defendants, they may properly be joined as plaintiffs." (*Cadigan* v. *Brown*, 120 Mass. 494.)

We find no decision in this state which establishes a contrary doctrine. In the case of *Barham* v. *Hostetter*, 67 Cal. 274, the difficulty in the case seems to have been that a cause of action at law for damages which was "not joint

as to all the plaintiffs, but undoubtedly several," was joined with a cause of action for an injunction " which is common to all the plaintiffs." The decision seems in line with the cases above cited.

In the present case, as above stated, there is no showing of damages sustained in any particular sum and no prayer for damages; and we consider the proceeding to be in equity to restrain the diversion of the water. In this view it does not seem to us material how the plaintiffs acquired their rights, i. e., whether they have rights as riparian owners or as appropriators. It is sufficient, . under the decisions cited, that they each have some right to the waters of the stream, which will suffer an injury from the diversion complained of.

We therefore advise that the judgment be reversed, and the cause remanded, with directions to overrule the demurrer to the complaint, with leave to the defendants to answer.

Belcher, C. C., and Gibson, C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with directions to overrule the demurrer to the complaint, with leave to the defendants to answer.