## STATE v. PRITCHETT.

No. 5467. Decided August 13, 1935. (48 P. [2d] 451.)

**110**

FOR FORMER OPINION, see 87 U. 104, 34 P. (2d) 704.

*N. J. Cotro-Manes* and *E. R. Christensen,* both of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Calvin W. Rawlings,* Dist. Att., and *Harley W. Gustin,* both of Salt Lake City, for the State.

EVANS, District Judge.

On July 16, 1934, upon the defendant's appeal, this court handed down a decision reversing the judgment upon the ground that the information filed against the defendant was fatally defective in that: (1) It fails to sufficiently describe the instrument which it is claimed the accused used and passed; and (2) conflicting allegations as to the ownership of the credit against which the check or draft was drawn, resulting in a failure of the complaint to state a public offense. The judgment was reversed and the cause remanded to the district court, with directions to sustain the demurrer upon the grounds stated, and for further proceedings. The respondent filed a petition for a rehearing. The reasons urged in the application were such as to convince us that a rehearing should be granted, and an order to that effect was accordingly entered, and the matter set down for argument at the April term.

The proceedings, other than the judgment roll, are not before us for review. Six errors were assigned, five of which have been abandoned. The remaining assignment assails the order of the court overruling the general and special demurrers to the information. By reference to the original opinion it will be observed that we reversed the judgment upon the grounds: (1) That the information does not state facts sufficient to constitute a public offense; (2) that the information does not substantially conform to the requirements of sections 8830 to 8832, inclusive, Comp. Laws Utah 1917. We there held that the check or draft, by the use of which the defendant transferred the credit, was not

sufficiently described; also that the conflicting allegations as to the ownership of the credit destroyed each other; and that, therefore, the information fails to charge a public offense. It should here be observed that the appellant did not brief or argue either of these propositions. It was for the purpose of affording a full argument upon the questions involved that the rehearing was granted, and upon which we have decided to re-examine the information.

In our opinion we said:

"The accused is charged with using and passing a bank check or draft in the sum of $1,642.36."

We observe that the information is silent as to the date of the check or draft, as to its maker or payee, and while we called attention to the statute defining the crime of misapplying credits of a corporation, we assume that the accused was charged with using and passing a bank check or draft which was not sufficiently described, the information being silent as to the maker and the payee. A re-examination of the information convinces us that the defendant was specifically charged with unlawfully misapplying credits of a corporation, and that we therefore misconceived the nature of the charge. The gist of the offense is that of misapplying credits, and if that result is accomplished, the offense is complete irrespective of the means employed. The information alleges the amount and ownership of the credit, the name of the bank upon which the check or draft was drawn, that the defendant deposited the sum of $1,642.36 to his own account in the Continental National Bank, and charged the same against the Utah Poultry Producers Co-operative Association. We are now, therefore, of the opinion, and so hold, that the date of the check and the name of the maker and payee were immaterial.

The defendant assigns as error that the information does not substantially conform to the requirements of sections 8830 to 8832, inclusive, Comp. Laws Utah 1917. These sec-

tions require that the information must contain the title of the action, the name of the parties, a statement of the acts constituting the offense in ordinary and concise language, in such a manner as to enable a person of common understanding to know what is intended, and must be certain and direct as to the party charged, the offense charged, and the particular circumstances of the offense when they are necessary to constitute a complete offense.

It was upon this assignment we held that the information did not sufficiently describe the check or draft. Upon the original submission, the defendant's contention is summed up as follows:

"We contend that the third ground of the defendant's demurrer should be sustained, as said information is ambiguous, and it can not be ascertained from a reading of the information whether the defendant is charged under section 8370 for misapplying credits of a corporation, or whether he is sought to be charged with having embezzled $1,642.36 lawful money of the United States of America, the money then and there belonging to the Utah Poultry Producers Cooperative Association, and entrusted to and left with the defendant, William A. Pritchett, by a reason of his being the office manager of that corporation. The fourth ground of demurrer interposed by the defendant is well taken, said information being duplicitous in that it attempts to charge the defendant with a violation of section 8370, by willfully misapplying the credit of a corporation, and also seeks to charge him with the general crime of embezzlement, by having taken $1,642.36 from the Utah Poultry Producers Cooperative Association, of which he was the office manager."

The defendant did not contend, until after a rehearing had been granted, that the check was insufficiently described, nor did he complain of any conflicting allegations in the information. We must assume, in view of the verdict, that there was sufficient evidence of a misapplication of funds, which was the specific act charged in the information. If the transfer of the credit was actually accomplished and misapplied by appellant, the technical steps by which it was accomplished become unimportant. It is the ultimate result which constitutes the offense. It is alleged that the appellant

willfully, unlawfully, feloniously, and fraudulently misapplied said credit by depositing to his own account and credit in the Continental National Bank of Salt Lake City, Utah, a bank check or draft for $1,642.36, drawn by appellant against the credit of the Poultry Association that it had with the National Copper Bank, and that in due course the National Copper Bank honored and paid the check, and charged the amount thereof against the account of the Poultry Association, and with intent to defraud and injure the association, misapplied the credit. We are now of the opinion, and so hold, that this is a sufficient compliance with the requirements of sections 8830 to 8832, inclusive.

Upon the rehearing, but not before, appellant argues that there are inconsistent allegations in the information. The averments referred to are as follows:

"William A. Pritchett did then and there as such agent wilfully, unlawfully, feloniously and fraudulently misapply a credit of said corporation (Utah Poultry Producers Cooperative Association), which it then and there had with the National Copper Bank of Salt Lake City, Utah, a corporation, in the sum of $1,642.36. * * * And the said sum of money was charged against and deducted from the aforesaid account and credit of the said Utah Poultry Producers Cooperative Association which it then and there had with the National Copper Bank. * * * And so, and in the manner aforesaid, the said defendant William A. Pritchett, did then and there, and with intent to defraud and injure said Utah Poultry Producers Cooperative Association, misapply its said credit in the sum of $1,642.36. That said defendant William A. Pritchett was not then and there, nor was any other person or corporation whatsoever entitled to said check or draft or the proceeds thereof or the said credit in payment of a just demand, or otherwise, or at all."

It is now argued upon resubmission that the last averment is inconsistent with and negatives the three other averments. This contention, however, cannot be sustained. The last averment is not essential in view of the other allegations of the complaint and may be regarded as mere surplusage. In any case it creates no more than an ambiguity. *Heeser* v. *Miller*, 77 Cal. 192, 19 P. 375; *Churchill* v. *Lauer*, 84 Cal. 233, 24 P. 107. The allegation of ownership of the credit

by the Utah Poultry Producers Association was a necessary averment. The apparently inconsistent allegation that no one at the time was entitled to the check or draft or credit in payment of a just demand is not an essential averment. It is alleged that the defendant was not then and there, nor was *any other person or corporation whatsoever*, entitled to the check or draft or the proceeds thereof, or the said credit. Other than what person or corporation? Obviously *other* than the Utah Poultry Producers Co-operative Association. Viewed in this light it creates no ambiguity and is not necessarily inconsistent with, or destructive of, the allegations of ownership by the Utah Poultry Producers Co-operative Association.

Title 105, c. 21, § 15, R. S. Utah 1933, provides as follows:

"No information or indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon the merits."

Chapter 43, § 1, of said title, provides:

"After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to have resulted in prejudice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment."

Appellant does not complain of any error in the proceedings during the trial of the case. With only the judgment roll before us we must assume that no evidence, other than proper legal evidence, was admitted; that no proper legal evidence was excluded; and also that the instructions correctly stated the law as applied to the evidence. Exceptions taken to the instructions are abandoned. Appellant does not claim any prejudice by reason of any of the proceedings, or that his rights were not fully protected during the trial. The only objections are purely technical and not substantial. This court did not, in its original opinion, agree with appellant's contentions, notwithstanding which we felt it our duty to determine whether or not the information stated a public

offense, and we believed that we had conscientiously discharged that duty. It is equally our duty to correct the error, and this we do without hesitation.

Our former decision is set aside, and the judgment of the district court is affirmed.

LARSON, District Judge.

I concur in the results.

FOLLAND, Justice (concurring).

I concur in the opinion of Judge EVANS. I am well satisfied with the holding that under a charge of misappropriating a credit, the check or draft need not be described with greater particularity than found in this information. The rule applicable in prosecutions for forgery does not apply here.

I am not so well satisfied as to the second point, but am impelled to concur because the defect or ambiguity was not pointed out by defendant at any time prior to the decision of this court. This convinces me that the defendant was not misled or prejudiced in any way by any claimed ambiguity with respect to the ownership of the credit. The information twice affirmatively and positively alleged that such credit was owned by the Utah Poultry Producers Co-operative Association. If defendant had been misled in any respect, undoubtedly his counsel would have urged the matter in brief and argument. As it is the objection was waived. This court has no duty to scrutinize the record in order to discover errors, not called to its attention, on which to base a reversal.

ELIAS HANSEN, Chief Justice (dissenting).

In my opinion the results reached in the decision heretofore rendered should not be disturbed. As the former opinion is reported in 87 U. 104, 34 P. (2d) 704 and will be printed in the Utah Reports, it is not necessary to repeat what is there said. The view is expressed in the prevailing opinion that the allegation of the information, "that said defendant William.

A. Pritchett was not then and there, nor was any other person or corporation whatsoever entitled to said check or draft or the proceeds thereof or the said credit in payment of a just demand, or otherwise, or at all," may be regarded as surplusage. In support of such view the cases of *Heeser* v. *Miller*, 77 Cal. 192, 19 P. 375, and *Churchill et al.* v. *Lauer et al.*, 84 Cal. 233, 24 P. 107, are cited. I am unable to see wherein the cited cases are in point. Both of the cases are civil, not criminal. One holds that there was no conflict in the allegations of the complaint; the other that the allegations of the complaint merely created an amibguity and, as such, must be attacked by special and not a general demurrer. The correct rule with respect to an indictment or information, such as the one here in question, is thus stated in 14 R. C. L. 191, § 37:

"Mere surplusage will not vitiate an indictment which contains sufficient matter to charge a crime. An unnecessary averment may be considered surplusage and rejected, as may a defective but immaterial averment, and a fact stated may be rejected as surplusage if it be merely in aggravation, so that it may be stricken out and yet leave the offense fully described. An indictment for a misdemeanor is good which alleges the facts which constitute the misdemeanor, notwithstanding it also alleges some but not all of the facts which would show that the criminal act was a felony, and duplicity which amounts only to surplusage is not fatal. No part of an indictment can, however, be rejected as surplusage for the purpose of sustaining a conviction under it, which, if true, shows that no crime was committed. On the contrary, it must be accepted as an admission of record which the state cannot refute. And an allegation in an indictment descriptive of that which is essential to the charge therein made is a material allegation and cannot be rejected as surplusage. So where a person or thing necessary to be mentioned in an indictment is described with unnecessary particularity, all the circumstances of the description, not being surplusage, must be proved."

The same rule is thus expressed in 1 Wharton's Crim. Proc. (10th Ed.) 349, § 305:

"When one material averment in an indictment is contradictory to another the whole is bad; but repugnancy in an immaterial part of the indictment does not render it bad, such as an impossible date in an immaterial part of the indictment, which may be corrected at any

time when the date does not enter into the essence of the offense charged, or it may be rejected as surplusage. Thus, to adopt one of the old illustrations, if an indictment charge the defendant with having forged a certain writing, whereby one person was bound to another, the whole will be vicious, for it is impossible that any one can be bound by a forgery.

"A relative pronoun, also referring with equal uncertainty to two antecedents will make the proceedings bad in arrest of judgment. But, as is elsewhere seen, every fact or circumstance laid in an indictment, which is not a necessary ingredient in the offense, may be rejected as surplusage."

Other authorities and cases sustaining the rule announced in the texts above quoted will be found cited in footnotes. The basis for the rule as to contradictory pleadings is analogous to the rule applicable to contradictory testimony of a witness. In the case of a witness, the weight of his testimony is determined by the weakest part thereof, and likewise the sufficiency of a pleading is tested by the weakest and not the strongest allegation therein. As stated in *State* v. *Flint*, 62 Mo. 393, quoting Chitty's Criminal Law, p. 231,

"It is essential that the charge should not be repugnant or inconsistent with itself, for the law will not admit of absurdity and contradiction in legal proceedings."

The rule is so well and uniformly established that further citation of authority is not necessary.

It will probably not be contended that the ownership of a credit which the accused is alleged to have misapplied is immaterial. The very essence of the charge attempted to be stated is that such credit belonged to some one other than the accused. The allegation that the "said defendant William A. Pritchett was not then and there, nor was any other person or corporation whatsoever, entitled to said check or draft, or the proceeds thereof, or the said credit, in payment of a just demand or otherwise, or at all," may not be said to create a mere ambiguity. It is a positive and direct averment that no one was entitled to the check or draft or the proceeds thereof or to the credit which forms the subject-matter of this controversy. It will be observed that the

pleader emphasized the all-inclusiveness of the absence of all right to the check, etc., by alleging that not only was the defendant without such right, but also that any other person or corporation whatsoever was without such right. The use of the word "other" in the sentence in question clearly means any person or corporation whatsoever remaining from the defendant mentioned at the beginning of the sentence. To say, as is said in the prevailing opinion, that the allegation under review obviously means that no person or corporation other than the Utah Poultry Producers Co-operative Association is entitled to the check or draft or the credit or the proceeds thereof, is to give an entirely different meaning to such allegation than that expressed by the language used. To construe such allegation so as to exclude the Utah Poultry Producers Co-operative Association from "any other person or corporation whatsoever" is to construe the language used in a way which I perceive is contrary to the clear meaning of the language used.

Thus, in my opinion, the allegation under review may not be regarded as surplusage without offending against the rule heretofore stated with respect to repugnancy, and the allegation in question is not susceptible of the construction given it in the prevailing opinion.

The other ground upon which, in the former opinion, it was held that the information is fatally defective was that the information "fails to sufficiently describe the instrument which it is claimed the accused used and passed." At the oral argument it was urged that the check or draft referred to in the information had been destroyed, probably by the accused. Such argument cannot properly be given any weight in passing upon the sufficiency of the information. It must be tested by the allegations contained therein and not by the evidence which may be given in support thereof, much less by the statement of counsel in argument as to what are the facts, where, as here, we have before us only the judgment roll.

A pleader may be relieved from setting forth the language

of a written instrument relied upon for conviction of a crime, such as forgery, or from a particular description of a written instrument used in the commission of a crime where such instrument is lost or destroyed or in the possession of the accused. However, to so relieve the pleader the facts relied upon must be alleged in the information. In the absence of an allegation to the contrary, the courts will assume that the pleader is in possession of all the facts relied upon for a conviction. We have a statute which provides that:

"When an instrument which is the subject of an information or indictment for forgery has been destroyed or withheld by the act or the procurement of the defendant, and the fact of such destruction or withholding is alleged in the information or indictment and established on the trial, the misdescription of the instrument is immaterial." R. S. Utah 1933, 105-21-20.

Such, in effect, is the law independent of statutes with respect to the crime of forgery and other similar crimes. By both our Constitution and statutory law an accused is entitled to know the nature and cause of the accusation against him before he is required to go to trial. Our statute requires that an information must contain "a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." It must "be direct and certain as to * * * the offense charged; and, the particular circumstances of the offense, when they are necessary to constitute a complete offense." R. S. Utah 1933, 105-21-3, and 105-21-5.

In this case it will be observed that the crime of misapplying the credit of a corporation by an officer or agent thereof may be accomplished by numerous acts. The information here charges that the defendant misapplied the sum of $1,642.36,

"lawful money of the United States of America, by then and there using and passing a certain bank check or draft for said sum of $1,642.36 drawn on and against the aforesaid credit, whereby said defendant William A. Pritchett received and misapplied said credit in

the sum of $1,642.36, in that he then and there deposited said check or draft for said sum to his own account and credit in the Continental National Bank of Salt Lake City, Utah."

It is urged on behalf of the state:

"That the accused was not charged nor did the information intend to charge him with unlawfully using and passing a bank check or draft. He was specifically charged with unlawfully applying credits of a corporation."

It will be observed that the specific acts which accused is charged with having committed are the using and passing of a bank check or draft. As I read the information the misapplication of the credit was the result of the using and passing of the bank check or draft. If the accused owned the check or draft or had the lawful right to use and pass the same, it is difficult to perceive from any facts alleged in the information wherein he was guilty of the crime of misapplying the credit. To charge one merely with the misapplication of a credit of a corporation is not "a statement of the acts constituting" the crime defined by the statute here in question. In determining whether or not a crime is charged in using and passing a check or draft, whereby the credit of a corporation was transferred to the credit of the accused, the maker and payee of the draft may be of controlling importance. Thus, if the corporation was the maker and accused the payee of the check or draft referred to in the information, then and in such case there are no other acts alleged which charged an offense. The allegation that the accused misapplied a credit of a corporation is not descriptive of any act, but may result from any one or more of the numerous acts mentioned in the statute under which this prosecution is had. If the state is in the possession of the check or draft which it claims the accused used in misapplying the credit of the Poultry Association, it should set out at least the maker and payee thereof. Such matters would seem to go to the very essence of the crime here attempted to be charged. On the other hand, if the check or draft is not available, such fact should be alleged.

If the information fails to state a public offense, the accused, as a matter of law, is prejudiced by the conviction. A conviction upon an information which fails to state a public offense may be attacked after verdict in arrest of judgment and upon an appeal to this court. R. S. Utah 1933, 105-24-11; *State* v. *Steele,* 67 Utah 1, 245 P. 332; *State* v. *Lund,* 75 Utah 559, 286 P. 960; *State* v. *Durfee,* 77 Utah 1, 290 P. 962.

For the reasons stated, I dissent from the order affirming the judgment appealed from.

EPHRAIM HANSON, Justice.

I concur in the views expressed in the dissenting opinion of the CHIEF JUSTICE.

MOFFAT and WOLFE, JJ., being disqualified, did not participate herein.